**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HEALTH INSURANCE PLAN OF NEW YORK, on behalf of itself and all others similarly situated, )))))))))))) | |
| Plaintiff, | **Civil Action No. 07-cv-6785 (HB)** |
| v. | |
| AVENTIS PHARMACEUTICALS, INC., | **Hon. Harold Baer, U.S.D.J.**<br>**ECF Case** |
| Defendant. | |

<u>**MEMORANDUM OF LAW**</u>
<u>**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**</u>
<u>**FOR LACK OF SUBJECT MATTER JURISDICTION**</u>
<u>**AND FAILURE TO STATE A CLAIM**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

I.      HIPNY CANNOT STATE A CLAIM FOR DECLARATORY OR INJUNCTIVE RELIEF ................................................................................................................ 3

     A.      Declaratory Relief Is Not Necessary or Appropriate With Respect to Aventis' Petitioning Conduct................................................................. 3

     B.      Equitable and Injunctive Relief Are Unnecessary Where The Acts in Question Started and Ended Years Ago................................................... 6

II.      HIPNY HAS NOT ALLEGED FACTS SUFFICIENT TO SUPPORT CAFA JURISDICTION OVER ITS STATE LAW CLAIMS........................................ 7

III.      HIPNY LACKS STANDING TO ASSERT CLAIMS UNDER THE LAWS OF FORTY-SIX STATES AND THE DISTRICT OF COLUMBIA ..................... 7

IV.      JURISDICTIONAL DEFECTS ASIDE, HIPNY's STATE LAW CLAIMS WOULD BE PREEMPTED BY FEDERAL LAW........................................... 9

V.      PLAINTIFF'S STATE LAW CLAIMS SUFFER FROM A MYRIAD OF LEGAL DEFICIENCIES AND MUST BE DISMISSED............................... 11

     A.      Indirect Purchaser Actions Are Not Permitted Under the Antitrust Laws of Florida, Kentucky, Louisiana, Massachusetts, or New Jersey............................ 12

     B.      Indirect Purchaser Actions Are Not Permitted Under the Consumer Protection Laws of Connecticut, Louisiana, Missouri, New Jersey, Oklahoma, Texas, or Washington....................................................... 14

     C.      Absent Express Authority to the Contrary, HIPNY's Consumer Protection Claims under the Laws of Colorado, Maryland, Ohio, and Rhode Island Must Be Dismissed to Avoid a Conflict in the States' Statutory Schemes ......... 17

     D.      The Conduct Alleged Does Not Reach the Consumer Protection and Trade Practices Laws of Arizona, Kansas, Minnesota, New Jersey, New Mexico, New York, and North Dakota...................................................... 19

     E.      The Conduct Alleged Is Not Within the Specific Activity Prohibited by the Kentucky, Michigan, Nevada or South Dakota Trade Practices and Consumer Protection Laws...................................................... 20

     F.      Plaintiffs' Class Claims Are Not Permitted under the Kentucky, Louisiana, and Tennessee Consumer Protection Acts or New York's Donnelly Act ........... 21

VI.      PLAINTIFF'S CLAIM FOR RESTITUTION, DISGORGEMENT AND CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT MUST BE DISMISSED ....................................................................................... 22

**TABLE OF CONTENTS**
(continued)

**Page**

CONCLUSION ............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Am.'s Favorite Chicken Co. v. Cajun Enters., Inc.*,
   130 F.3d 180 (5th Cir. 1997) ...........................................................................14

*Blockbuster, Inc. v. Galeno*,
   472 F.3d 53 (2d Cir. 2006)..................................................................................7

*Boos v. Abbott Labs.*,
   925 F. Supp. 49 (D. Mass. 1996) ......................................................................13

*Broadview Chem. Corp. v. Loctite Corp.*,
   417 F.2d 998 (2d Cir. 1969)............................................................................3, 4

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001).........................................................................................10

*Cetel v. Kirwan Fin. Group, Inc.*,
   460 F.3d 494 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 1267 (2007) ...................19

*Chance v. Bd. of Exam'rs*,
   561 F.2d 1079 (2d Cir. 1977)..............................................................................6

*City of Milwaukee v. Illinois & Michigan*,
   451 U.S. 304 (1981).........................................................................................23

*Desiano v. Warner-Lambert & Co.*,
   467 F.3d 85 (2d Cir.), *cert. granted*, ___ S. Ct. ___, 2007 WL 1420397 (No. 06-
   1498, Sept. 25, 2007) .......................................................................................10

*DiTolla v. Doral Dental IPA of N.Y., LLC*,
   469 F.3d 271 (2d Cir. 2006).................................................................................7

*In re Ditropan XL Antitrust Litig.*,
   No. 06-cv-01761, 2007 WL 1411617 (N.D. Cal. May 11, 2007).....................8, 9

*Dow Jones & Co. v. Harrods Ltd.*,
   346 F.3d 357 (2d Cir. 2003)............................................................................3, 5

*Durant v. ServiceMaster Co.*,
   208 F.R.D. 228 (E.D. Mich. 2002), *vacated on other grounds by* 109 F. App'x 27
   (6th Cir. 2004)..................................................................................................22

## TABLE OF AUTHORITIES
(continued)

*In re Enron*,
297 B.R. 382 (Bankr. S.D.N.Y. 2003) ................................................................4

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) ..........................................................................................23

*Eversole v. EMC Mortgage Corp.*,
No. Civ.A. 05-124, 2005 WL 3018755 (E.D. Ky. Nov. 9, 2005) ....................13

*FTC v. Mylan Labs., Inc.*,
99 F. Supp. 2d 1 (D.D.C. 1999) ......................................................................13

*FTC v. Mylan Labs., Inc.*,
62 F. Supp. 2d 25 (D.D.C. 1999) ....................................................................23

*Free v. Abbott Labs., Inc.*,
176 F.3d 298 (5th Cir. 1999), *aff'd by an equally divided court*, 529 U.S. 333
(2000) ...............................................................................................................13

*In re Graphics Processing Units Antitrust Litigation*,
No. C 06-07417, 2007 WL 2875686 (N.D. Cal. Sept. 27, 2007) ....................19

*Griffin v. Dugger*,
823 F.2d 1476 (11th Cir. 1987) ........................................................................8

*Hammes v. AAMCO Transmissions, Inc.*,
33 F.3d 774 (7th Cir. 1994) ..............................................................................7

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ..........................................................................................10

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977) ................................................................................ *passim*

*Ippolito v. Meisel*,
958 F. Supp. 155 (S.D.N.Y. 1997) ....................................................................4

*Lewis v. Casey*,
518 U.S. 343 (1996) .......................................................................................8, 9

*Luckenbach S.S. Co. v. United States*,
312 F.2d 545 (2d Cir. 1963) ..............................................................................4

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)................................................................................................8

*Mattera v. Clear Channel Commc'ns, Inc.,*
  239 F.R.D. 70 (S.D.N.Y. 2006) ..........................................................................7

*Milk Wagon Drivers Union v. Meadowmoor Dairies,*
  312 U.S. 287 (1941)..............................................................................................6

*Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.,*
  No. 02 Civ. 10338, 2003 WL 21277114 (S.D.N.Y. June 2, 2003)....................4

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
  350 F. Supp. 2d 160 (D. Me. 2004) ...............................................13, 15, 21, 23

*The N.Y. Times Co. v. Gonzales,*
  459 F.3d 160 (2d Cir. 2006)..............................................................................4-5

*O'Quin  v. Verizon Wireless,*
  256 F. Supp. 2d 512 (M.D. La. 2003)................................................................22

*Penn. Employees Ben. Trust Fund v. Zeneca Inc.,*
  No 05-5340, 2007 U.S. App. LEXIS 19601 (3d Cir. Aug. 17, 2007) ........10, 11

*Port Wash. Teachers' Ass'n v. Bd. of Educ. of Port Wash. Union Free Sch. Dist.,*
  478 F.3d 494 (2d Cir. 2007)................................................................................8

*In re Relafen Antitrust Litig.,*
  225 F.R.D. 14 (D. Mass. 2004 ..........................................................................24

*In re Rezulin Products Liab. Litig.,*
  |392 F. Supp. 2d 597 (S.D.N.Y. 2005)...............................................................15

*Robinson v. Metro-N. Commuter R.R. Co.,*
  267 F.3d 147 (2d Cir. 2001)................................................................................5

*In re Salomon Analyst Level 3 Litig.,*
  350 F. Supp. 2d 477 (S.D.N.Y. 2004)................................................................8

*Shmueli v. City of New York,*
  No. 03 CV 1195, 2007 WL 1659210 (S.D.N.Y. June 7, 2007) ........................4

*In re Terazosin Hydrochloride Antitrust Litig.,*
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) ...................................................9, 23, 24

# TABLE OF AUTHORITIES
(continued)

**Page**

*Twp. of River Vale v. Town of Orangetown,*
   403 F.2d 684 (2d Cir. 1968).............................................................................7

*United States v. Borden Co.,*
   347 U.S. 514 (1954)........................................................................................6

*United States v. Or. State Med. Soc'y,*
   343 U.S. 326 (1952)........................................................................................6

## STATE CASES

*Abbott Labs., Inc. v. Segura,* |
   907 S.W.2d 503 (Tex. 1995).....................................................................16, 17

*Arnold v. Microsoft Corp.,*
   No. 2000-CI-00123, 2001 WL 193765 (Ky. Cir. Ct. July 21, 2001), *aff'd,* No.
   2000-CA-002144, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001)
   (unpublished) ...............................................................................12, 13, 21

*Blewett v. Abbott Labs.,*
   938 P.2d 842 (Wash. Ct. App. 1997)..............................................................17

*Brooks v. Norwest Corp.,*
   103 P.3d 39 (N.M. App. 2004) .......................................................................20

*Ciardi v. F. Hoffman-La Roche, Ltd.,*
   762 N.E.2d 303 (Mass. 2002) ........................................................................13

*Davidson v. Microsoft Corp.,*
   792 A.2d 336 (Md. Ct. Spec. App. 2002)..................................................17, 18

*Duvall v. Silvers, Asher, Sher & McLaren, M.D.'s,*
   998 S.W.2d 821 (Mo. Ct. App. 1999).............................................................15

*First Page v. Network Paging Corp.,*
   628 So. 2d 130 (La. Ct. App. 1993)................................................................14

*Forton v. Laszar,*
   609 N.W.2d 850 (Mich. 2000), *overruled on other grounds by Liss v. Lewiston-*
   *Richards, Inc.,* 732 N.W.2d 514 (Mich. 2007) ..............................................21

*Ireland v. Microsoft Corp.,*
   No. 00-cv-201515, 2001 WL 1868946 (Mo. Cir. Ct. Jan. 24, 2001)................15

# TABLE OF AUTHORITIES
(continued)

**Page**

*Johnson v. Microsoft Corp.*,
　　834 N.E.2d 791 (Ohio 2005) ........................................................................18

*Ly v. Nystrom*,
　　615 N.W.2d 302 (Minn. 2000)........................................................................19

*Mack v. Bristol-Myers Squibb Co.*,
　　673 So. 2d 100 (Fla. Dist. Ct. App. 1996) .....................................................12

*Major v. Microsoft Corp.*,
　　60 P.3d 511 (Okla. Civ. App. 2002) ...............................................................16

*Morris v. Sears, Roebuck & Co.*,
　　765 So. 2d 419 (La. Ct. App. 2000)................................................................21

*Nat'l Gypsum Co. v. Ace Wholesale, Inc.*,
　　738 So. 2d 128 (La. Ct. App. 1999) ...............................................................15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
　　647 N.E.2d 741 (N.Y. 1995)...........................................................................20

*Pomerantz v. Microsoft Corp.*,
　　50 P.3d 929 (Colo. Ct. App. 2002) .................................................................17

*Sickles v. Cabot Corp.*,
　　877 A.2d 267 (N.J. Super. Ct. App. Div. 2005)........................................14, 15

*Siena v. Microsoft Corp.*,
　　796 A.2d 461 (R.I. 2002) ...............................................................................18

*Sperry v. Crompton Corp.*,
　　863 N.E.2d 1012 (N.Y. 2007).........................................................................22

*Stevenson v. Louis Dreyfus Corp.*,
　　811 P.2d 1308 (N.M. 1991) ............................................................................20

*Stifflear v. Bristol-Myers Squibb Co.*,
　　931 P.2d 471 (Colo. Ct. App. 1996) ...............................................................17

*Stutman v. Chem. Bank*,
　　731 N.E.2d 608 (N.Y. 2000)...........................................................................20

# TABLE OF AUTHORITIES
(continued)

**Page**

*Thibaut v. Thibaut*,
    607 So. 2d 587 (La. Ct. App. 1992)...............................................................15

*Tucker v. Sierra Builders*,
    180 S.W.3d 109 (Tenn. Ct. App. 2005) .........................................................22

*Vacco v. Microsoft Corp.*,
    793 A.2d 1048 (Conn. 2002) ..........................................................................14

*Vermilion Hosp., Inc. v. Patout*,
    906 So. 2d 688 (La. Ct. App. 2005).................................................................15

*Wilson v. Gen. Motors Corp.*,
    921 A.2d 414 (N.J. 2007)..........................................................................14, 15

## FEDERAL STATUTES, REGULATIONS & RULES

15 U.S.C. § 15.....................................................................................................2, 11

15 U.S.C. §  26..........................................................................................................6

28 U.S.C. §  1332(d)(2) ............................................................................................7

28 U.S.C. §  1332(d)(6) ............................................................................................7

21 C.F.R. § 10.20 ....................................................................................................10

21 C.F.R. § 10.30 ....................................................................................................10

Fed. R. Civ. P. 12(b)(1)....................................................................................1, 7, 24

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 24

Fed. R. Civ. P. 23(b)(2).............................................................................................5

Fed. R. Civ. P. 23(b)(3).............................................................................................5

## STATE STATUTES

Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*....................................19
    Ariz. Rev. Stat. Ann. § 44-1522(A) ................................................................19

Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-101, *et seq.* ......................17

TABLE OF AUTHORITIES
(continued)

**Page**

Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110b, *et seq.* ................................................................................................14

Florida Antitrust Act, Fla. Stat. §§ 542.15, *et seq.* ........................................................12
    Fla. Stat. § 542.32 ................................................................................................12

Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, *et seq.* ...........................19
    Kan. Stat. Ann. § 50-626(a) .................................................................................19
    Kan. Stat. Ann. § 50-627(a) .................................................................................19

Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann. §§ 365, *et seq.* ..................20
    Ky. Rev. Stat. Ann.§ 365.055(1) .........................................................................20

Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.* .......................12, 21
    Ky. Rev. Stat. Ann. § 367.170 .............................................................................13
    Ky. Rev. Stat. Ann. § 367.175 .............................................................................13

Louisiana Monopolies Law ("LML"), La. Rev. Stat. Ann. §§ 51:121, *et seq.*..............13

Louisiana Unfair Trade Practices Act, La. Rev. Stat. Ann. §§ 51:1401, *et seq.*................14, 15, 22
    La. Rev. Stat. Ann. § 51:1409(A) (2006) ...........................................................21

Maryland Consumer Protection Act ("MCPA"), Md. Code Ann. Com. Law §§ 13-101, *et seq.* ................................................................................................18

Mass. Gen. Laws Ann. ch. 93, § 1 (West 2005) .............................................................13

Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws §§ 445.901, *et seq.* ............20
    Mich. Comp. Laws § 445.903(1)(a)-(kk)............................................................21

Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. §§ 325F.67, *et seq.* ..............19
    Minn. Stat. § 325F.69(1)......................................................................................19

Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq.* ..............15

Nevada Deceptive Trade Practice Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*................21
    Nev. Rev. Stat. § 598.0915(11)............................................................................21
    Nev. Rev. Stat. § 598.0916 ..................................................................................21
    Nev. Rev. Stat. § 598.092 ....................................................................................21

New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* .....................15, 19

New Jersey Antitrust Act ("NJAA"), N.J. Stat. Ann. §§ 56:9-1, *et seq.* ......................13
    N.J. Stat. Ann.§ 56:9-18.......................................................................................14

## TABLE OF AUTHORITIES
### (continued)

**Page**

New Mexico Unfair Practices Act ("NMUPA"), N.M. Stat. §§ 57-12-1, *et seq.* ..........................20

N.M. Stat. § 57-12-2(D) ....................................................................................20

N.Y. C.P.L.R. 901(b) (McKinney 2006) .......................................................22

Donnelly Act, N.Y. Gen. Bus. Law §§ 340, *et seq.* ........................................9, 12, 22

New York Deceptive Acts & Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.* ...................9, 20

North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq.* .................................19

Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. §§ 1345.01, *et seq.* ....................................................................................18

Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15, §§ 751, *et seq* ....................16

Rhode Island Deceptive Trade Practices Act ("RIDTPA"), R.I. Gen. Laws §§ 6-13.1-1, *et seq.* ....................................................................................19

S.D. Codified Laws §§ 37-24-1, *et seq.* .........................................................21

S.D. Codified Laws § 37-24-6 ..............................................................21

Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et seq.* ...........................22

Tenn. Code Ann. § 47-18-109(a)(1) ...................................................22

Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.* ....................................................................16

Wash. Rev. Code § 19.86.020 .........................................................17

Wash. Rev. Stat. § 19.86.080 .........................................................17

Defendant Aventis Pharmaceuticals, Inc. ("Aventis") respectfully submits this memorandum in support of its motion to dismiss the amended complaint ("Complaint") of plaintiff Health Insurance Plan of New York ("HIPNY"). The sprawling complaint includes three counts: a federal law claim in Count I for declaratory and injunctive relief on behalf of indirect purchasers of leflunomide tablets throughout the United States and its territories; state law claims in Count II for indirect purchasers in forty-seven states and the District of Columbia; and unspecified claims in Count III for a constructive trust and disgorgement on behalf of all class members. Count I should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and Counts II and III should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## <u>INTRODUCTION</u>

This case, like its counterpart *Louisiana Wholesale Drug Co. v Aventis Pharmaceuticals Inc., et al.,* 07-cv-7343, purports to present the question whether a branded drug manufacturer may be stripped of its *Noerr-Pennington* antitrust immunity for bringing safety and efficacy concerns about generic versions of a drug to the attention of the Food and Drug Administration (the "FDA"). Both Louisiana Wholesale Drug Co., Inc. ("Louisiana Wholesale," a direct purchaser of branded and generic leflunomide) and HIPNY (an indirect purchaser of branded and generic leflunomide), appear to believe that conclusory assertions about the objective merit of a petition and speculative allegations about when and why a party filed it should strip the petitioning party of its First Amendment immunity, and leave it vulnerable to antitrust claims that its conduct delayed generic leflunomide manufacturers from coming to market. Both plaintiffs are patently wrong. As Aventis argued in its motion to dismiss Louisiana Wholesale's complaint, explicitly adopted and incorporated by reference herein, neither of the plaintiffs'

views of the law nor their characterization of the documents underlying the respective complaints supports the causes of action they assert against Aventis.

Both complaints should be dismissed for multiple reasons. First, the petitioning conduct at issue falls well within the antitrust immunity prescribed by the *Noerr-Pennington* doctrine, and cannot be characterized as "objectively baseless"; second, neither plaintiff has antitrust standing to assert a Sherman Act Section 2 claim or analogous state law claims; and third, neither plaintiff has adequately alleged a "relevant market" for such a federal or state law claim.[1]

HIPNY's complaint should be dismissed for additional reasons not pertinent to Louisiana Wholesale's complaint. First among these, and fourth overall, HIPNY's federal law claim in Count I should be dismissed because there is no basis for declaratory or injunctive relief since the conduct at issue started and ended more than two years ago and cannot threaten any prospective harm.[2] Fifth, HIPNY has failed to allege adequate facts to sustain this Court's Class Action Fairness Act ("CAFA") jurisdiction over the state law claims in Count II. Sixth, jurisdictional defects aside, HIPNY lacks standing to assert claims on behalf of leflunomide purchasers under the antitrust or consumer protection laws of forty-seven states and the District of Columbia. Seventh, state law claims arising from allegedly misleading statements to the FDA are preempted by federal law in any event. Eighth, even if these catastrophic deficiencies

---

[1] *See* Mem. in Supp. of Mot. to Dismiss Compl., *Louisiana Wholesale Drug Co., v. Aventis Pharmaceuticals Inc.,* 07-cv-7343, at 7-23. ("Louisiana Wholesale Mem.," copy attached hereto as Exhibit 1.) Aventis will not repeat these arguments here, except to note one key difference making the case for dismissing HIPNY's claims even more compelling. If Louisiana Wholesale (which purchased branded leflunomide directly from Aventis) is not an efficient enforcer of the antitrust laws and therefore lacks standing to enforce them, *a fortiori* HIPNY (which was at least one step further removed from the alleged misconduct, since it purchased branded leflunomide from entities *other* than Aventis) is an even less efficient enforcer of the antitrust laws and therefore lacks standing to enforce them. *See* Louisiana Wholesale Mem. at 18-20.

[2] HIPNY cannot assert a damages claim in Count I because indirect purchasers do not have standing to pursue treble damage actions under Section 4 of the Clayton Act, 15 U.S.C. § 15, for violations of the Sherman Act. *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977).

survived a motion to dismiss Count II, defects in the majority of HIPNY's state law claims could not. Ninth and finally, Count III – which purports to assert a constructive trust and disgorgement count – utterly fails to identify the law or laws under which that claim is asserted and fails for that reason alone.

## ARGUMENT[3]

### I.     HIPNY CANNOT STATE A CLAIM FOR DECLARATORY OR INJUNCTIVE RELIEF

HIPNY's first cause of action seeks declaratory, equitable and injunctive relief based entirely on Aventis' filing of a citizen petition in March of 2005, Compl. ¶¶ 61, 93-94, and the FDA's denial of the petition and approval of generic leflunomide in September of 2005, *id.* ¶ 69. Because HIPNY has not alleged an ongoing or recurring violation of law – nor any threat of further injury or damage – such relief is not available as a matter of law.

#### A.     Declaratory Relief Is Not Necessary or Appropriate With Respect to Aventis' Petitioning Conduct

Allegations of completed acts do not support a claim for declaratory relief. The Second Circuit has long relied on two primary criteria when evaluating declaratory judgment jurisdiction: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would offer relief from uncertainty and finalize the controversy. *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969); *see also Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003) (noting that of the five factors considered, these two form the origin of the Second Circuit's test). Absent compelling reasons to do so, a court need not exercise jurisdiction over a claim for declaratory relief. *Dow Jones*, 346 F.3d at 360.

---

[3] The factual background for and legal standards applicable to this motion are the same as those relating to Aventis' motion to dismiss Louisiana Wholesale's complaint. *See* Louisiana Wholesale Mem. at 2-7.

The Court should not exercise jurisdiction over Count I, since a declaratory judgment concerning Aventis' petitioning conduct will not serve a useful purpose or offer relief from uncertainty. The Declaratory Judgment Act exists to provide a prospective mechanism for allowing parties to avoid engaging in conduct that will result in some future liability. *In re Enron Corp.*, 297 B.R. 382, 386 (Bankr. S.D.N.Y. 2003) (citing *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963)); *see also Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) ("[D]eclaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved."). But where – as here – the alleged conduct has already occurred, a declaratory judgment is without purpose and therefore inappropriate. *See Shmueli v. City of New York*, No. 03 CV 1195, 2007 WL 1659210, at *9 (S.D.N.Y. June 7, 2007) (declining to give declaratory relief in a case "where rather than serve a useful purpose," a declaratory judgment "would merely declare whether a past constitutional violation has occurred") (internal citation and quotation marks omitted); *Ippolito v. Meisel*, 958 F. Supp. 155, 165 (S.D.N.Y. 1997) (refusing to entertain declaratory judgment action based merely on alleged past wrongs); *Nat'l Union*, 2003 WL 21277114, at *5 (dismissing the claim and finding that a declaratory judgment was unnecessary to address past actions).

When these *Broadview* criteria provide uncertain guidance, courts will also examine (1) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata;'" (2) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court;" and (3) "whether there is a better or more effective remedy." *The N.Y. Times Co. v. Gonzales*, 459

F.3d 160, 167 (2d Cir. 2006) (quoting *Dow Jones,* 346 F.3d at 359-60) (quotation marks omitted).

HIPNY's request for declaratory relief certainly raises questions about all of these criteria, and in particular the degree to which its request amounts to procedural fencing and a race to *res judicata.* HIPNY appears to believe that certification of a class claim for declaratory relief (Count I) will be easier than certification of a class claim for liability or damages (Count II), since the former will be adjudicated under Fed. R. Civ. P. 23(b)(2), while the latter will be subject to the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3).

Indeed, the state law claims in Count II would require HIPNY (among other things) to demonstrate that the claims of indirect purchasers in forty-eight jurisdictions would be appropriate for class treatment, notwithstanding conflicts between class members whose injuries (if any) varied depending upon the source, time, and place of purchase, and whose claims would have to be adjudicated under the antitrust and/or consumer protection statutes of forty-eight different jurisdictions with different elements of proof and measures of injury. The Declaratory Judgment Act was not intended to relieve parties of their burdens of proof and persuasion, and HIPNY cannot circumvent difficult questions of law and fact by asserting a claim for declaratory or injunctive relief. *See, e.g., Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001) (holding that "[i]nsignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery" and noting that injunctive or declaratory relief must be the primary reason for the suit and the predominant relief sought). Count I must be viewed for what it is:  a faulty foundation for federal court jurisdiction and a procedural artifice to avoid the complexities inherent in an antitrust class action.

**B.    Equitable and Injunctive Relief Are Unnecessary Where The Acts in Question Started and Ended Years Ago**

In Count I, HIPNY also asserts that it is entitled to equitable and injunctive relief "to correct for the anticompetitive market effects" allegedly caused by Aventis' petitioning conduct, and in order to "assure that similar anticompetitive conduct does not occur in the future." Compl. ¶ 94.  But the entire premise of the Complaint is that the filing of the citizen petition in *March of 2005* delayed the FDA's approval of generic leflunomide until *September of 2005,* and thus the facts alleged do not support a claim for injunctive relief.

Like declaratory relief, injunctive relief is intended to address ongoing or prospective harm, and it cannot reach prior conduct.  *United States v. Borden Co.*, 347 U.S. 514, 520 (1954) (holding that injunctions may only be granted where "there exists some cognizable danger of recurrent violation") (internal quotation marks omitted); *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952) (observing that the "sole function of an action for injunction is to forestall future violations"); *Chance v. Bd. of Exam'rs*, 561 F.2d 1079, 1092 n.25 (2d Cir. 1977) (quoting *Milk Wagon Drivers Union v. Meadowmoor Dairies*, 312 U.S. 287, 298-99 (1941) (noting that an injunction is "justified only by the (wrongdoing) that induced it and only so long as it counteracts a continuing (violation)'")).  Section 16 of the Clayton Act allows suits for injunctive relief only when there is "*threatened* loss or damage," since traditional equitable principles permit injunctive relief against "*threatened* conduct that *will* cause loss or damage." 15 U.S.C. § 26 (emphasis added).

The Complaint alleges that the illegal conduct and purported harm ceased to exist more than two years ago.  HIPNY has not alleged any ongoing illegal conduct or harm.  As a result, HIPNY is not entitled to any injunctive or equitable relief, and Count I should be dismissed.

## II.    HIPNY HAS NOT ALLEGED FACTS SUFFICIENT TO SUPPORT CAFA JURISDICTION OVER ITS STATE LAW CLAIMS

Anticipating the loss of a federal question hook upon which to hang supplemental state law claims, HIPNY has also alleged that the Court has jurisdiction over its claims pursuant to CAFA, Compl. ¶ 16, but it has failed to allege any amount in controversy.

Under CAFA, a federal court has jurisdiction over a class action when – and only when – the aggregate amount in controversy exceeds $5 million.  CAFA § 4(a)(2); 28 U.S.C. § 1332(d)(2), (d)(6).  The party seeking federal jurisdiction bears the burden of alleging (and ultimately proving) facts substantiating the Court's jurisdiction.  *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (holding that the party seeking subject matter jurisdiction under CAFA must prove "to a reasonable probability" that the amount in controversy exceeds $5 million); *see also DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 275 (2d Cir. 2006); *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70 (S.D.N.Y. 2006).

Without any allegation concerning the amount in controversy, the Court may not exercise CAFA jurisdiction over HIPNY's state law claims.  *Twp. of River Vale v. Town of Orangetown*, 403 F.2d 684, 685 (2d Cir. 1968) (holding that the plaintiffs' failure to allege the amount in controversy rendered the complaint jurisdictionally defective); *accord Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994) (observing that plaintiff's failure to allege citizenship and the amount in controversy precluded the court from exercising jurisdiction). Accordingly, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## III.    HIPNY LACKS STANDING TO ASSERT CLAIMS UNDER THE LAWS OF FORTY-SIX STATES AND THE DISTRICT OF COLUMBIA

HIPNY purports to assert claims under the antitrust and/or consumer protection statutes of forty-seven states and the District of Columbia even though it does not allege residence or

purchases in any state other than New York, its own state of residence and incorporation.[4]

Absent specific allegations that it purchased branded or generic leflunomide in any of the other

jurisdictions, HIPNY has failed to show that it has suffered any injury entitling it to bring claims

under the laws of those jurisdictions.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

(1992); *Port Wash. Teachers' Ass'n v. Bd. of Educ. of Port Wash. Union Free Sch. Dist.*, 478

F.3d 494, 498-502 (2d Cir. 2007).

To establish an Article III case or controversy, the named class representative "must

allege and show that *they personally have been injured*, not that injury has been suffered by

other, unidentified members of the class to which they belong and which they purport to

represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal citations and quotations omitted)

(emphasis added).  Moreover, it is insufficient for a named plaintiff to assert a case or

controversy with respect to just one of many claims asserted, since "a claim cannot be asserted

on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to

that claim."  *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987); *In re Salomon Analyst

Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) (noting the "basic requirement" that "at

least one *named* plaintiff must have standing to pursue each claim alleged.").

In *In re Ditropan XL Antitrust Litigation*, 06-cv-01761, 2007 WL 1411617, at *6-10

(N.D. Cal. May 11, 2007), Judge White recently dismissed the plaintiffs' claims under the laws

of twenty-four states precisely because the named plaintiffs lacked standing to assert them.  The

putative class representatives – who resided in just four of the twenty-eight states identified in

the complaint – alleged that defendant Alza had engaged in a scheme to preclude a competitor

from producing a generic version of ditropan, thereby causing indirect purchasers to pay inflated

---

[4] Count II includes antitrust and/or consumer protection act claims in every state save for Alabama, Indiana and Wyoming.  *See* Compl. at 24 -30.

prices for the drug. *Id.* at *1-2. Since the named plaintiffs failed to allege that they resided or purchased the drug in any of the other twenty-four states, the court found they lacked standing to bring the additional state law claims. *Id.* at *10.

The court in *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001), reached the same result in another multistate class action alleging anticompetitive conduct by a brand name drug company. The court dismissed all of the indirect purchasers' claims under the laws of states where the named plaintiffs did not reside or otherwise allege an injury. "[N]amed plaintiffs cannot rely on unidentified persons within those states to state a claim for relief. Class allegations that others suffered injuries giving rise to claims 'add . . . nothing to the question of standing.'" *Id.* at 1371 (quoting *Lewis*, 518 U.S. at 357).

HIPNY's admission that it is a "New York corporation" and its broad-brush allegation that it "provides prescription benefits coverage to its members, who reside throughout the United States and Puerto Rico," Compl. ¶ 14, add nothing to the question whether it has standing to assert claims under the laundry list of state laws identified in its Complaint. Fairly read, HIPNY has only alleged an injury in New York, where it resides, and its standing is limited accordingly.[5]

## IV.    JURISDICTIONAL DEFECTS ASIDE, HIPNY'S STATE LAW CLAIMS WOULD BE PREEMPTED BY FEDERAL LAW

HIPNY contends that Aventis had all the information reflected in the petition long before it was filed, Compl. ¶ 63, and that the petition (a creature of the federal Food, Drug, and Cosmetic Act or "FDCA") was "objectively baseless," *id.* ¶ 68. This "fraud-lite" claim is clearly preempted by federal law, since it arises from a specific – and inherently federal – statutory and

---

[5] As discussed more fully below, HIPNY is not authorized to bring a class action claim under the Donnelly Act (New York's antitrust law), N.Y. Gen. Bus Law §§ 340, *et seq.*, in any event, and it has not alleged a consumer transaction that is the very foundation of a claim under the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq. See infra* at 21.

regulatory scheme, and would stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

In *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), the Supreme Court unequivocally held that "state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law." *Id.* at 348. The Supreme Court explained that the "conflict stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the [FDA], and that this authority is used by the [FDA] to achieve a somewhat delicate balance of statutory objectives." *Id.* Because the *Buckman* plaintiffs' state law claims arose from and depended upon the existence of the FDA's regulatory scheme, the Supreme Court held that state claims "would exert an extraneous pull on the scheme established by Congress" and were therefore preempted. *Id.* at 353.[6]

The citizen petition at the heart of this case is likewise an exclusive creation of federal law, *see* 21 C.F.R. § 10.30, and the authority to police those submissions lies exclusively with the FDA, *see id.* § 10.20. As such, any state law claims are preempted by that scheme. Indeed, the Third Circuit recently reached the same conclusion in an analogous case arising from the conflict between prescription advertising (which is governed by the FDCA and regulations implementing it) and state consumer protection claims.

In *Pennsylvania Employees Benefit Trust Fund v. Zeneca Inc.*, 05-5340, 2007 U.S. App. LEXIS 19601 (3d Cir. Aug. 17, 2007), the Third Circuit analyzed the question whether compliance with the FDCA's provisions concerning prescription drug advertisements was a critical element of plaintiffs' state law claims. Although the court found that the plaintiffs would

---

[6] The Second Circuit distinguished *Buckman* in a case involving a specific Michigan food and drug statute, but agreed with *Buckman* that state actions based solely on alleged misrepresentations to the FDA are preempted by federal law. *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 95, 97 (2d Cir.), *cert. granted*, ___ S. Ct. ___, 2007 WL 1420397 (No. 06-1498, Sept. 25, 2007).

not have to demonstrate non-compliance with the FDCA in order to prevail, it nonetheless held that allowing the state law claims "would unnecessarily frustrate the FDCA's purpose and FDA regulations, as the extent of agency involvement in regulating prescription drug advertising is extensive and specific." *Id.* at *33.

HIPNY admits that the very purpose of the citizen petition process is to allow the public to express "genuine concerns about safety, scientific or legal issues . . . ." Compl. ¶ 45. Allowing HIPNY and other purchaser plaintiffs to bring antitrust and/or consumer protection laws under the laws of forty-seven states and the District of Columbia would, as *Buckman* and *Zeneca* warned, "exert an extraneous pull on the scheme established by Congress" and chill the disclosure of important safety and efficacy concerns to the FDA.  The FDA alone has authority to police statements made to it, and HIPNY should not be permitted to affect the FDA's exclusive responsibility for evaluating and introducing new drugs and insuring the safety and efficacy of those drugs.  Plaintiffs' state law claims are impliedly preempted by federal law and should be dismissed accordingly.[7]

## V.  PLAINTIFF'S STATE LAW CLAIMS SUFFER FROM A MYRIAD OF LEGAL DEFICIENCIES AND MUST BE DISMISSED

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977), the United States Supreme Court held that parties who purchased price-fixed goods from entities other than the price-fixers (so-called "indirect purchasers") cannot sue the price-fixers under Section 4 of the Clayton Act, 15 U.S.C. § 15.  Since *Illinois Brick,* twenty-three states identified by plaintiffs have repealed *Illinois Brick* (whether by positive enactment or judicial recognition) in order to permit indirect

---

[7] As noted below, *see infra* at 22-24, the legal authority for Count III is entirely unclear on the face of the Complaint.  To the extent that Count III is based on state law it should also be preempted in light of the conflict noted above.  *See Zeneca*, 2007 U.S. App. LEXIS 19601, at *36 n.12 (concluding that a Delaware unjust enrichment claim was also preempted by federal law).

purchasers to sue price-fixers under certain circumstances.[8]   HIPNY has asserted claims under the laws of these states, as well as under the laws of twenty-five states that have not enacted or recognized *Illinois Brick* exceptions.[9]   There are numerous defects in HIPNY's claims under the former, and catastrophic defects in the latter.

### A.    Indirect Purchaser Actions Are Not Permitted Under the Antitrust Laws of Florida, Kentucky, Louisiana, Massachusetts, or New Jersey

Florida law does not permit indirect purchasers to assert claims under the Florida Antitrust Act ("FAA"), Fla. Stat. §§ 542.15, *et seq.*  The Florida legislature has explicitly instructed courts to follow federal precedent when construing the FAA.  *See id.* § 542.32 ("It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes.").  Florida courts have held true to this mandate, refusing to allow indirect purchaser suits under the FAA.  *See Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 102 (Fla. Dist. Ct. App. 1996) (citing with approval the trial court's holding that "'Florida adheres to the 'direct purchaser' rule enunciated in *Illinois Brick*'").

Likewise, indirect purchaser suits are not permitted under the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*  In *Arnold v. Microsoft Corp.*, No. 2000-CI-00123, 2001 WL 193765, at *3, *7 (Ky. Cir. Ct. July 21, 2001), *aff'd*, No. 2000-CA-002144,

_____

[8] At the time of the conduct in question, Arizona, California, the District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin permitted private actions by indirect purchasers under at least one state statute.  However, even in the states that provide a private right of action to indirect purchasers, the right to sue is not absolute or all-encompassing.  For example, class actions are not permitted under New York's Donnelly Act,  N.Y. Gen. Bus. Law. §§ 340, *et seq.*, although indirect purchasers may sue price-fixers under the same statute.  *See infra* at 22.

[9] At the time of the conduct in question, Alaska, Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland,  Missouri, Montana, New Hampshire, New Jersey, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, and Washington did not permit private actions by indirect purchasers under any state statute.  For ease of reference a chart summarizing the status of HIPNY's claims under the various laws listed in Count II is attached hereto as Exhibit 2.

2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001) (unpublished), the Kentucky Court of Appeals found "the reasoning of *Illinois Brick* to be highly persuasive," and held that indirect purchasers cannot state a claim under Ky. Rev. Stat. Ann. § 367.175, 2001 WL 193765 at *3, *7, or Section 367.170 since that provision "does not allow a person who is not in privity with the seller or lessor to bring an action for violations of the statute." *Id.* (citation omitted). *See also Eversole v. EMC Mortgage Corp.*, No. Civ.A. 05-124, 2005 WL 3018755 (E.D. Ky. Nov. 9, 2005) (holding that indirect purchasers do not have standing to sue under Ky. Rev. Stat. Ann. § 367.170).[10]

Similarly, indirect purchasers do not have standing to sue under the Louisiana Monopolies Law ("LML"), La. Rev. Stat. Ann. §§ 51:121, *et seq.*  In *Free v. Abbott Laboratories, Inc.*, 176 F.3d 298, 299 (5th Cir. 1999), *aff'd by an equally divided court*, 529 U.S. 333 (2000) (mem.), the Fifth Circuit held that the *Illinois Brick* bar on indirect purchaser suits applied to claims under the LML.  Other courts applying Louisiana law have followed *Free* and held that indirect purchaser suits are not permitted under the LML.  *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 173 (D. Me. 2004); *FTC v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 6-7 (D.D.C. 1999).

Massachusetts likewise does not permit indirect purchaser suits under its antitrust act, Mass. Gen. Laws Ann. ch. 93, § 1 (West 2005).  In *Ciardi v. F. Hoffman-La Roche, Ltd.*, 762 N.E.2d 303, 308 (Mass. 2002), the Supreme Judicial Court held that *Illinois Brick* prohibited indirect purchaser claims under Chapter 93, the commonwealth's antitrust law.  *See also Boos v. Abbott Labs.*, 925 F. Supp. 49, 51 (D. Mass. 1996) (same).

Finally, indirect purchasers do not have standing to sue for violations of the New Jersey Antitrust Act ("NJAA"), N.J. Stat. Ann. §§ 56:9-1, *et seq.*  The NJAA provides that New

---

[10] HIPNY's Kentucky claim would also fail because the allegedly anticompetitive conduct did not occur within the Commonwealth of Kentucky, as the statute requires.  *Arnold,* 2001 WL 193765, at *9.

Jersey's antitrust statutes "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes." *Id.* § 56:9-18. Accordingly, "indirect purchasers . . . have no standing to assert a private right of action under the New Jersey Antitrust Act." *Wilson v. Gen. Motors Corp.*, 921 A.2d 414, 416 (N.J. 2007) (per curiam) (noting that this conclusion was not challenged by the plaintiffs); *see also Sickles v. Cabot Corp.*, 877 A.2d 267, 275 (N.J. Super. Ct. App. Div. 2005) (holding that "based on the holding in *Illinois Brick*, the harmonization clause of [N.J. Stat. Ann. § 56:9-18], and the failed attempt by our Legislature to amend the [NJAA] with an *Illinois Brick* repealer, . . . an indirect purchaser is precluded from suing for antitrust violations under the [NJAA]").

### B.    Indirect Purchaser Actions Are Not Permitted Under the Consumer Protection Laws of Connecticut, Louisiana, Missouri, New Jersey, Oklahoma, Texas, or Washington

The Connecticut Supreme Court has held that indirect purchasers cannot assert claims under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110b, *et seq.*, when the CUTPA claim is based on the same conduct as an antitrust claim that would be barred by *Illinois Brick. Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1049-50 (Conn. 2002). In *Vacco*, an indirect purchaser asserted claims under both the Connecticut antitrust law and the CUTPA predicated on the same allegedly anticompetitive conduct. *Id.* The court adopted *Illinois Brick, id.* at 1058, and concluded that the plaintiff lacked standing to assert the CUTPA claim based on the same allegedly competitive conduct as the antitrust claim. *Id.* at 1066-67.

Similarly, state and federal courts have consistently held that plaintiffs cannot salvage a claim that is deficient under Louisiana's antitrust law by bringing the same claim under the Louisiana Unfair Trade Practices Act, La. Rev. Stat. Ann. §§ 51:1401, *et seq.* ("LUTPA"). *See Am.'s Favorite Chicken Co. v. Cajun Enters., Inc.*, 130 F.3d 180, 186 (5th Cir. 1997); *First Page v. Network Paging Corp.*, 628 So. 2d 130, 136 (La. Ct. App. 1993). Moreover, the vast majority

-14-

of Louisiana courts have found that a LUTPA claim requires a relationship between the parties which, in the indirect purchaser context, is wholly non-existent.  *See, e.g.*, *Vermilion Hosp., Inc. v. Patout*, 906 So. 2d 688, 692 (La. Ct. App. 2005) ("[T]he personal right of action granted under the LUTPA applies only to *direct* consumers or to business competitors.") (emphasis added); *Nat'l Gypsum Co. v. Ace Wholesale, Inc.*, 738 So. 2d 128, 130 (La. Ct. App. 1999) (holding that a distributor did not have standing to sue under LUTPA); *Thibaut v. Thibaut*, 607 So. 2d 587 (La. Ct. App. 1992) (holding that plaintiffs did not have LUTPA standing because they were neither consumers nor business competitors); *see also In re Rezulin Products Liab. Litig.*, 392 F. Supp. 2d 597, 615 (S.D.N.Y. 2005) (concluding that the "prevailing jurisprudence" in Louisiana is that only direct consumers and business competitors may sue under LUTPA).

Missouri courts have also adopted *Illinois Brick* and held that indirect purchasers do not have standing under the state's antitrust law.  *See Duvall v. Silvers, Asher, Sher & McLaren, M.D.'s*, 998 S.W.2d 821, 825 (Mo. Ct. App. 1999).  To avoid a contradiction in the state's statutory scheme, Missouri courts have extended the *Illinois Brick* bar to indirect purchaser suits under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq. See Ireland v. Microsoft Corp.*, No. 00-cv-201515, 2001 WL 1868946, at *1 (Mo. Cir. Ct. Jan. 24, 2001); *accord Motor Vehicles*, 350 F. Supp. 2d at 192 (holding that "[t]he plaintiffs' indirect purchaser status bars them from recovering . . . under the MMPA").

The Supreme Court of New Jersey recently held that *Illinois Brick* bars indirect purchaser actions under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, when the allegations merely assert an anticompetitive scheme.  *Wilson*, 921 A.2d at 417.  The decision followed prior lower court decisions.  *See, e.g., Sickles*, 877 A.2d at 277 ("[F]or us to permit an indirect purchaser . . . to recast his antitrust claim as a consumer fraud violation would

undermine the standing requirements of the [New Jersey Antitrust Act] and would essentially permit an end run around the policies allowing only direct purchasers to recover under the Antitrust Act.").

In Oklahoma, *Illinois Brick* bars indirect purchaser actions under the Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15, §§ 751, *et seq.*  In *Major v. Microsoft Corp.*, 60 P.3d 511, 513 (Okla. Civ. App. 2002), the indirect-purchaser plaintiff challenged the defendant's allegedly anticompetitive conduct under both the OCPA and the state antitrust law. The Oklahoma Court of Civil Appeals affirmed the trial court's dismissal of the antitrust claims under *Illinois Brick*, and adopted the trial court's holding that *Illinois Brick* also barred the indirect purchaser's claims under the OCPA, refusing to allow the plaintiff to make "an end-run around *Illinois Brick* by permitting other statutory claims upon the same factual allegations underlying the state antitrust claim."  *Id.* at 517.

In addition, the Supreme Court of Texas has held that "the long-standing bar to indirect purchaser recovery in antitrust suits also bars indirect purchasers who primarily allege antitrust conduct, but who sue under the Texas Deceptive Trade Practices-Consumer Protection Act," Tex. Bus. & Com. Code §§ 17.41, *et seq.*, reasoning that to allow such recovery would "reward[] creative pleading at the expense of consistent application of legal principles."  *Abbott Labs., Inc. v. Segura*, 907 S.W.2d 503, 507 (Tex. 1995).

The Court of Appeals of Washington has also refused to allow indirect purchasers to make an end run around the bar on indirect purchaser standing, holding that when indirect purchasers lack standing under state antitrust law, they cannot pursue a cause of action for the same allegedly anticompetitive conduct under the state consumer protection law, Wash. Rev.

Code § 19.86.020.  *Blewett v. Abbott Labs.*, 938 P.2d 842, 846-47 (Wash. Ct. App. 1997) (citing

*Segura*, 907 S.W.2d at 507).[11]

**C.    Absent Express Authority to the Contrary, HIPNY's Consumer Protection Claims under the Laws of Colorado, Maryland, Ohio, and Rhode Island Must Be Dismissed to Avoid a Conflict in the States' Statutory Schemes**

HIPNY and the class members it seeks to represent cannot subvert the statutory schemes

of states that have banned indirect purchaser suits under their antitrust laws by repackaging those

claims under the consumer protection laws.  Because the antitrust laws of Colorado, Maryland,

Ohio, and Rhode Island do not permit indirect purchaser suits, HIPNY's claims under the

consumer protection laws of those states, which are based on the same conduct HIPNY alleges to

have violated federal and other states' antitrust laws, must be dismissed.

The Colorado Court of Appeals has squarely held that indirect purchasers lack standing

to bring suit under Colorado's antitrust law.  *See Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 932

(Colo. Ct. App. 2002); *see also Stifflear v. Bristol-Myers Squibb Co.*, 931 P.2d 471, 476 (Colo.

Ct. App. 1996) (applying *Illinois Brick* to bar indirect purchaser standing under an earlier version

of Colorado's antitrust statute).  To keep standing principles under Colorado's consumer

protection law, the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-101, *et*

*seq.*, in harmony with well-established standing principles barring indirect purchaser standing

under Colorado's antitrust law, this court must dismiss HIPNY's CCPA claims.

Likewise, the Court of Special Appeals of Maryland has held that indirect purchasers

cannot assert claims under Maryland's antitrust law.  *Davidson v. Microsoft Corp.*, 792 A.2d

336, 343 (Md. Ct. Spec. App. 2002).  Accordingly, to harmonize Maryland's consumer

---

[11] Washington recently amended its antitrust law to permit courts, upon finding an antitrust violation "to restore to any person in interest any moneys or property, real or personal, which may have been acquired, regardless of whether such person purchased or transacted for goods or services directly with the defendant or indirectly through resellers."  Act of Apr. 17, 2007, ch. 66, S.S.B. 5228 (codified at Wash. Rev. Stat. § 19.86.080).  However, this statute, effective on April 17, 2007, does not apply retroactively to the conduct alleged in this case.

protection law with the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann. Com. Law §§ 13-101, *et seq.*, this Court must dismiss Plaintiff's claim challenging allegedly anticompetitive conduct under the MCPA.[12]

The Ohio Supreme Court has also squarely held that indirect purchasers cannot bring claims under Ohio's antitrust law, the Valentine Act. *See Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 798 (Ohio 2005) ("[C]onsistent with long-standing Ohio jurisprudence, which has followed federal law in antitrust matters, we adopt and follow *Illinois Brick*'s direct-purchaser requirement and hold that an indirect purchaser of goods may not assert a Valentine Act claim for alleged violations of Ohio antitrust law."). Accordingly, to keep Ohio's consumer protection law, the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. §§ 1345.01, *et seq.*, consistent with "long-standing" principles of Ohio's antitrust law forbidding indirect purchaser standing, this court must dismiss Plaintiff's claim challenging allegedly anticompetitive conduct under the OCSPA.[13]

Finally, the Rhode Island Supreme Court has held that indirect purchasers may not bring claims under Rhode Island's antitrust law. *See Siena v. Microsoft Corp.*, 796 A.2d 461, 464-65 (R.I. 2002) (per curiam) (adopting *Illinois Brick* and holding that "[i]n light of our determination that plaintiffs are not direct purchasers from Microsoft, plaintiffs have no standing to sue under the [state] Antitrust Act"). To harmonize standing principles under Rhode Island's consumer protection law with the Rhode Island Deceptive Trade Practices Act ("RIDTPA"), R.I. Gen.

---

[12] The *Davidson* court articulated another ground on which this Court must dismiss HIPNY's MCPA claim, since that statute does not reach monopolistic conduct or other violations of Maryland's antitrust statute. 792 A.2d at 344-45.

[13] According to the *Johnson* court, the OCSPA claim would also have to be dismissed because "a complaint that alleges a violation of the Ohio Consumer Sales Practices Act predicated upon monopolistic pricing practices does not state a claim upon which relief can be granted" since the state antitrust act provides the exclusive remedy for such monopolistic conduct. 834 N.E. 2d. at 801.

Laws §§ 6-13.1-1, *et seq.*, this Court must dismiss Plaintiff's claim challenging allegedly

anticompetitive conduct under the RIDTPA.  The district court did precisely this in *In re*

*Graphics Processing Units Antitrust Litigation*, No. C 06-07417, 2007 WL 2875686, at *19

(N.D. Cal. Sept. 27, 2007) (noting that "Rhode Island does not permit state-law antitrust claims

by indirect purchasers" and granting defendant's motion to dismiss indirect purchaser claims).

> **D.    The Conduct Alleged Does Not Reach the Consumer Protection and Trade**
> **Practices Laws of Arizona, Kansas, Minnesota, New Jersey, New Mexico,**
> **New York, and North Dakota**

The Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*, requires that

the prohibited act have occurred "in connection with" sales of and advertisements for

merchandise, and would plainly not apply to petitioning conduct before a federal agency.  *Id.* §

44-1522(A).  Likewise, the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et*

*seq.*, makes it illegal for a person to engage in a deceptive act "in connection with the sale or

advertisement of any merchandise," *id.* § 51-15-02.  The Kansas Consumer Protection Act, Kan.

Stat. Ann. §§ 50-623, *et seq.*, similarly provides that the deceptive or unconscionable act must

take place "in connection with a consumer transaction."  *Id.* §§ 50-626(a), 50-627(a).  A

violation of the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. §§ 325F.67, *et seq.*,

requires a showing that the defendant made a false statement "in connection with the sale of . . .

merchandise."  *Id.* § 325F.69(1).  *Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn. 2000) (noting that

"the statutory purpose of protecting consumers was clear from the inception" of the MCFA).

New Jersey law also requires a consumer transaction.  In *Cetel v. Kirwan Financial*

*Group, Inc.*, the court held that the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1,

*et seq.* applies only to fraud that takes places in "consumer transactions." 460 F.3d 494, 514 (3d

Cir. 2006) (internal quotation marks omitted), *cert. denied*, 127 S. Ct. 1267 (2007).  The New

Mexico Supreme Court held that to state a claim under the New Mexico Unfair Practices Act

("NMUPA"), N.M. Stat. §§ 57-12-1, *et seq.*, the plaintiff must allege that the defendant made a misrepresentation in connection with a sale or similar transaction. *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991); *accord Brooks v. Norwest Corp.*, 103 P.3d 39, 51 (N.M. App. 2004); *see also* N.M. Stat. § 57-12-2(D) (defining "unfair or deceptive trade practice" to mean a false representation "knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce").

The Court of Appeals of New York has repeatedly held that a violation of the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*, requires a deceptive act directed towards consumers, not towards competitors or a government agency. *See Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000) (holding that "[a] plaintiff under section 349 must prove . . . that the challenged act or practice was consumer-oriented"); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995) (holding that, "as a threshold matter, plaintiffs claiming the benefit of section 349 . . . must charge conduct of the defendant that is consumer-oriented").

### E.    The Conduct Alleged Is Not Within the Specific Activity Prohibited by the Kentucky, Michigan, Nevada or South Dakota Trade Practices and Consumer Protection Laws

The Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann. §§ 365, *et seq.* prohibits predatory or discriminatory pricing, *id.*, secret payments, allowances, and/or the extension of special privileges to certain purchasers, *id.*, and using a mailing that purports to announce a prize without prominently and conspicuously communicating the exclusions or conditions. *Id.* § 365.055(1).  Clearly none of those prohibitions implicate petitioning conduct before the FDA.

The Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws §§ 445.901, *et seq.*, also sets forth an extensive list of methods, acts, and practices unlawful under the Act,

which are all exclusively focused on consumer transactions. *See id.* § 445.903(1)(a)-(kk). The

Michigan Supreme Court has held that the practices proscribed by the MCPA are limited to those

itemized in the act. *See Forton v. Laszar*, 609 N.W.2d 850, 853 (Mich. 2000), *overruled on*

*other grounds by Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007).

Likewise, the Nevada Deceptive Trade Practice Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*,

outlaws deceptive trade practices directed toward consumers, including deceptive advertising, *id.*

§ 598.0915(11), certain unsolicited sales calls, *id.* § 598.0916, and tying a prize to the purchase

of goods or services, *id.* § 598.092.

South Dakota's deceptive trade practices and consumer protection law, S.D. Codified

Laws §§ 37-24-1, *et seq.*, also "prohibits only those acts or practices specifically designated as

unlawful in the statute." *In re New Motor Vehicles*, 350 F. Supp. 2d at 202. The activities

designated in the statute deal entirely with advertising, pricing, and sales. S.D. Codified Laws

§ 37-24-6.

### F.   Plaintiffs' Class Claims Are Not Permitted under the Kentucky, Louisiana, and Tennessee Consumer Protection Acts or New York's Donnelly Act

HIPNY's class claims under the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann.

§§ 367.110, *et seq.*, should be dismissed. In *Arnold*, 2001 WL 193765, at *6, the Kentucky

Court of Appeals explicitly held that it would "decline[] to open such a sweepingly vague statute

for use as a blunt instrument in a Class Action suit." *Id.*

Similarly, in Louisiana a person "may bring an action individually but *not in a*

*representative capacity*" under the Louisiana Unfair Trade Practices and Consumer Protection

Act ("LUTPA"). La. Rev. Stat. Ann. § 51:1409(A) (2006) (emphasis added). Both state and

federal courts have concluded that the statute means what it says: private class actions are barred

under LUTPA. *See Morris v. Sears, Roebuck & Co.*, 765 So. 2d 419, 422 (La. Ct. App. 2000);

*see also O'Quin v. Verizon Wireless*, 256 F. Supp. 2d 512, 519 (M.D. La. 2003) ("Louisiana's legislature . . . has expressly excluded the option of bringing a class action to plaintiffs seeking to recover under Louisiana's Unfair Trade Practices Act.").

Likewise, the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et seq.*, ("TCPA") does not permit private plaintiffs to bring class actions. The TCPA states that any person damaged by a violation of the statute "may bring an action *individually* to recover actual damages." *Id.* § 47-18-109(a)(1) (emphasis added). Courts have interpreted this provision in accord with its plain meaning, holding that "class actions cannot be maintained under the TCPA." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 n.9 (Tenn. Ct. App. 2005); *see also Durant v. ServiceMaster Co.*, 208 F.R.D. 228, 233 (E.D. Mich. 2002) (holding that "[p]laintiffs may only bring an action 'individually,' and not as members of a class, under the TCPA"), *vacated on other grounds by* 109 F. App'x 27 (6th Cir. 2004).

Under New York law, "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." N.Y. C.P.L.R. 901(b) (McKinney 2006). The Court of Appeals of New York recently held that the treble damages provision in Donnelly Act, N.Y. Gen. Bus. Law §§ 340, *et seq.*, is a "penalty" for the purpose of C.P.L.R. 901(b), and thus, treble "damages are not recoverable in a class action." *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1013 (N.Y. 2007). Because class actions are not permitted under the Donnelly Act, plaintiffs' claims must be dismissed.

## VI.    PLAINTIFF'S CLAIM FOR RESTITUTION, DISGORGEMENT AND CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT MUST BE DISMISSED

Finally, in Count III, HIPNY purports to assert a claim for restitution, "constructive trust and disgorgement of the unjust enrichment of Defendant." Compl. ¶¶ 13, 99-105. HIPNY has not identified the legal foundation – federal or state – on which this omnibus claim rests.

Certainly, Count III cannot rest on federal common law since federal courts may recognize common law only in those "few and restricted instances" when "Congress has not spoken to a particular issue . . . and there exists a 'significant conflict between some federal policy or interest and the use of state law' . . . ." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 312-13 (1981) (citation omitted); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This is not one of those instances, because the body of federal antitrust law is already well-developed and, under *Illinois Brick*, clearly precludes an unjust enrichment claim.

"[N]o restitutionary remedy can escape the limitations the United States Supreme Court imposed on federal antitrust recovery in *Illinois Brick*." *In re New Motor Vehicles*, 350 F. Supp. 2d at 211. The court in *FTC v. Mylan Laboratories, Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999), joined this reasoning and rejected the plaintiff-states' attempt to evade the *Illinois Brick* rule. It recognized that allowing restitution or disgorgement under federal law would "heighten the possibility that defendants in antitrust actions could be exposed to multiple liability," one of the central concerns that formed the basis of the Supreme Court's *Illinois Brick* decision. *Id.* at 41. The court, finding that plaintiffs "should not be allowed to circumvent *Illinois Brick* through a novel interpretation of [Clayton Act] § 16," dismissed plaintiff's disgorgement and restitution claims under the Clayton Act. *Id.* at 42.

In *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001), the court considered and dismissed a restitution count that similarly failed to identify any federal or state authority for it. It assumed, for purposes of argument, that the plaintiffs intended to assert a state law basis for restitution, and observed that allowing the claim to proceed would violate the policy considerations underlying *Illinois Brick*. Specifically, the court held that the

establishment of a constructive trust consisting of all excessive amounts paid for terazosin

hydrochloride and the adjudication of claims for restitution

> would require the Court to resolve unduly complex disputes and to
> impose a remedy reducing other plaintiffs' potential awards or
> subjecting the defendants to greater liability.  State legislatures and
> courts that adopted the *Illinois Brick* rule against indirect purchaser
> antitrust suits did not intend to allow "an end run around the
> policies allowing only direct purchasers to recover."

*Id.* at 1380 (citation omitted); *cf. In re Relafen Antitrust Litig.*, 225 F.R.D. 14 (D. Mass. 2004)

(refusing to certify a Rule 23 class because of differences between the different states' statutory

and common law unjust enrichment recovery rules for indirect purchasers).  By dismissing the

unjust enrichment claim, this Court can stop the "end run" Plaintiffs are attempting with their

elusive and undefined claim.

## CONCLUSION

For the foregoing reasons, Aventis Pharmaceuticals, Inc. respectfully requests that Count I be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and Counts II and III be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated:  October 22, 2007

Respectfully submitted,

/s/ Rosanna K. McCalips
John M. Majoras
Julia E. McEvoy (admitted *pro hac vice*)
Rosanna K. McCalips (admitted *pro hac vice*)
Jones Day
51 Louisiana Avenue, NW
Washington, DC  20001
Tel.:  202-879-3939
Fax:  202-626-1700

*Counsel for* Aventis Pharmaceuticals, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Rosanna K. McCalips, certify that the foregoing Memorandum of Law in Support of Defendant Aventis Pharmaceuticals, Inc.'s Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim was served on October 22, 2007, on the counsel listed below in the manner indicated below:

| | |
|---|---|
| Richard Cohen<br>Peter D. St. Phillip<br>LOWEY DANNENBERG BEMPORAD<br>SELINGER & COHEN, P.C.<br>White Plains Plaza<br>One North Broadway<br>White Plains, NY 10601<br><br>*Via ECF Filing* | Mark M. Sandmann<br>Mark D. Fischer<br>Jeffrey Swann<br>RAWLINGS & ASSOCIATES, P.L.L.C.<br>325 W. Main Street<br>Louisville, KY 40202<br><br>*Via Federal Express* |
| Gerald Lawrence<br>LOWEY DANNENBERG BEMPORAD<br>SELINGER & COHEN, P.C.<br>White Plains Plaza<br>One North Broadway<br>White Plains, NY 10601<br><br>*Via Federal Express* | David S. Nalven<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>One Main Street, Fourth Floor<br>Cambridge, MA 02142<br><br>*Via ECF Filing* |
| Thomas M. Sobol<br>Edward Notargiacomo<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>One Main Street, Fourth Floor<br>Cambridge, MA 02142<br><br>*Via Federal Express* | |

/s/ Rosanna K. McCalips